UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

ANTHONY J. RICHARDSON

CRIMINAL ACTION

NO. 16-68-JJB-EWD

## RULING

This matter is before the Court on a Motion to Suppress Evidence and Statements (Doc. 18) brought by the Defendant, Anthony Richardson. The Government filed an Opposition (Doc. 20). An evidentiary hearing was held on the Motion on November 28, 2016. Both parties submitted post hearing memoranda (Docs. 29 and 30). The Court allowed the Government to file a Response (Doc. 31-1) to the Defendant's post hearing memorandum because the Defendant raised new arguments in his post hearing memorandum. Further, the Court allowed the Government to present additional testimony regarding the new issues. An evidentiary hearing on those issues was held on March 29, 2017. No further briefing is needed. For the reasons stated below, the Defendant's Motion is **GRANTED in part and DENIED in part**.

I. FACTUAL FINDINGS[1]

This case involves an illegally parked vehicle at a Motel 6 and the subsequent search of that vehicle as well as a search of the driver's nearby motel room.

While patrolling a Motel 6 in Baton Rouge, Officer Barcelona ("Barcelona") observed a vehicle parked in a handicap spot without handicap tags. The officer approached the driver's side

---

[1] The Court describes the credible evidence that was introduced at the hearing. "The judge's role at a suppression hearing is to determine the credibility of witnesses and find the facts. At a suppression hearing, it is 'well within the trial court's discretion' to weigh the evidence and make credibility determinations regarding conflicting testimony." *United States v. Jones*, 187 F.Supp.3d 714, 723 (M.D. La. 2016) (citing *Norman v. Stephens*, No. H–13–0624, 2013 WL 6498979, at *21 (S.D. Tex. Dec. 11, 2013)).

1

of the vehicle with his gun drawn.[2] The officer observed the Defendant sorting money and pills on the center console. The officer testified that he could not identify the pills and that they could have been vitamins.[3] The officer shined his flashlight into the car, and the Defendant quickly put the pills into a cigarette box and dropped them on the floor.

The officer asked the Defendant to step out of the vehicle. The Defendant exited the vehicle and was apparently nervous. The officer performed a *Terry* frisk for weapons. The officer did not find any weapons on the Defendant.

After the pat down, the officer placed handcuffs on the Defendant and secured him in his police vehicle.[4] The officer stated that the Defendant was just detained at this time, implying that the Defendant was not under arrest yet.[5]

The officer began talking to the Defendant, advising him of his *Miranda* rights, and asking him about the civil parking violation and the pills. The Defendant told the officer that the pills

---

[2] Originally the officer testified that he did not have his gun drawn. In the second hearing, he said it was possible the gun was drawn but he could not recall. While the Court found the officer credible for the most part, the Defendant unequivocally stated that the officer had his gun drawn when he approached Richardson's window. The testimony of a witness that he or she does not remember a particular matter has little or no weight against the direct testimony of a witness who does remember the matter, or against other positive evidence. *Denver & R.G.W.R. Co. v. Lipscomb*, 437 P.2d 554, 556 (Colo. 1968) ("It is settle[d] law that the testimony of a witness that he does not remember whether a certain event took place does not contradict positive testimony that the event did take place."); *Bender v. Roundup*, 138 Mont. 306, 309 (Mont. 1960) ("[T]he testimony of a witness that he does not remember whether a certain event or conversation took place does not contradict positive testimony that such event or conversation did take place"). Accordingly, where the officer said he could not recall whether he drew his gun but said it was possible, and the Defendant clearly stated that the gun was drawn, the Court credits the Defendant's testimony.

[3] First H'rg Tr. 16-17, Doc. 28 (Testimony of Officer Barcelona).

[4] Second H'rg Tr. (Testimony of Officer Barcelona) (Q: Do you believe whether you had him in handcuffs or not? A: I do not believe I handcuffed him. I believe I just sat him in the back of my car, but I don't recall exactly. Q: Okay. **Is it possible he was handcuffed? A: It is possible**."). The officer testified that he did not believe he handcuffed Richardson before placing him in the vehicle but it was possible. The Defendant unequivocally stated that he was placed in handcuffs. The Court finds that the Defendant was placed in handcuffs after the pat down and before being placed in the car. The Defendant's clear unequivocal statement outweighs the officer's wavering answer. The officer's statement that it was possible he handcuffed the Defendant further bolsters the Court's finding.

[5] First H'rg Tr. 10:16-18, Doc. 28 (Testimony of Officer Barcelona) ("Q: Did you put him in handcuffs? A: I don't believe he was handcuffed at that time. **He was just detained**."); 23:6-18 (Testimony of Anthony Richardson) ("A: **He opened the door up and he told me I'm not under arrest**, but he told me to put those handcuffs on and he sat me in his car…Q: Did he hand you a pair of handcuffs? Did he give you some handcuffs? A: No he didn't give them to me. He put them on me. Q: He put them on you? A: Yes, sir.").

2

belonged to him and that he had a prescription for them. The officer asked the Defendant if he could search the vehicle, and the Defendant consented. The officer found Xanax, Oxycodone, and rolling papers in the vehicle.

After concluding the search, the officer returned to the police vehicle to speak with the Defendant. The Defendant admitted that he smoked synthetic marijuana. Earlier, he had also advised the officer that he was renting a room in the Motel 6 and his girlfriend was in the room. The officer asked the Defendant if he had any synthetic marijuana in his room. The Defendant stated that he was not sure and advised the officer he could go to the room to check. He also asked the officer to tell his girlfriend about what had occurred.

Before Officer Barcelona went to search the room, he called for back-up and ran a background check on Richardson. The background check revealed that Richardson was a convicted felon. After Officer Kennedy ("Kennedy") arrived, the officers went to the Defendant's room and knocked on the door. Richardson's girlfriend ("Stepter") answered and gave the officers consent to search the room including Defendant's bags. Stepter advised the officers that certain bags belonged to Richardson and certain bags belonged to her.

While searching the room, the officers saw a firearm in plain view that was sticking out from the top of a work boot. They also opened and searched Richardson's duffel bag. Inside the duffel bag, they found a toiletry kit. They searched the toiletry kit and found a brown glass bottle which contained synthetic marijuana and MDMA. They did not search Ms. Stepter's items.

The officers left the motel and went outside to re-question the Defendant. The Defendant admitted that the firearm and drugs belonged to him. The officers stated that the Defendant was "very cooperative" throughout the entire encounter.

## II.   LAW & ANALYSIS

The Defendant was charged with unlawful possession of a firearm and possession of various controlled substances. He now moves to suppress all of the evidence recovered from his encounter with the officers. The Defendant has not been particularly precise about which police action he is challenging. However, after hearing ample testimony and reviewing the briefs, the Court finds that the Defendant is arguing that the evidence and his statements should be suppressed for four reasons—(1) the seizure of the car and the subsequent actions of the officer which included handcuffing and questioning the Defendant were unlawful; (2) the search of the vehicle was unlawful; (3) the search of the motel room was unlawful; and (4) the failure by the officers to preserve video footage from the Motel 6 is a violation of Defendant's due process rights that warrants suppression of the evidence.

After two hearings and reviewing all of the briefs, the Court finds that the officer's use of physical restraints during an investigatory stop was unlawful where the Defendant only posed a remote threat of fight or flight. Accordingly, the drugs found in Defendant's vehicle and the drugs seized from the duffel bag in his motel room shall be suppressed as they were "fruits" of the unlawful conduct. The firearm found in the Defendant's motel room shall not be suppressed as it was lawfully found after the Defendant's girlfriend consented to a search of their joint motel room.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[6] The exclusionary rule prohibits the introduction of evidence obtained as a result of unlawful searches and seizures.[7] The

---

[6] U.S. Const., amend. IV.
[7] *United States v. Runyan*, 275 F.3d 449, 466 (5th Cir. 2001).

rule excludes not only the illegally obtained evidence itself, but also other incriminating evidence that is the "fruit" of unlawful police conduct.[8]

When the Government searches or seizes a defendant without a warrant, the Government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional.[9] In this case, the burden is on the Government to prove that the detention of the Defendant and the subsequent searches were constitutional.

### A. Legality of the Seizure
#### 1. *The Officer Acted Lawfully in Detaining the Defendant, Removing Him From the Vehicle, and Performing a Brief Terry Frisk.*

The initial stop and removal of Richardson from the vehicle were lawful for two independent reasons. First, the Defendant was committing a parking violation which gave the officer authority to detain the Defendant and remove him from his vehicle. Second, throwing the pills on the ground gave the officer reasonable suspicion that a crime was being committed.

The stopping of a vehicle (whether it is parked or moving) and detention of its occupants constitutes a seizure under the Fourth Amendment.[10] To analyze the legality of a vehicle stop, courts utilize the two-step *Terry* standard.[11] A court must first examine whether an officer's decision to stop the vehicle was justified at its inception, and then it must examine whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop.[12] A *Terry* stop that is justified at its inception may nevertheless violate the Fourth Amendment if it is "excessively intrusive in its scope or manner of execution."[13]

---

[8] *Id.*
[9] *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).
[10] *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004); *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006) (noting that the Fourth Amendment was implicated when officers stopped occupants who were inside a parked vehicle).
[11] *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010).
[12] *Id.*
[13] *Brown v. Lynch*, 524 Fed. App'x. 69, 75 (5th Cir. 2013) (citing *United States v. Johnson*, 592 F.3d 442, 451 (3d Cir. 2010)) (unpubl.).

In the context of the first prong, where a vehicle is parked illegally, an officer can briefly detain the vehicle to conduct a *Terry* stop.[14] Additionally, "a law enforcement officer making a traffic stop [can] order the driver and any passengers to exit the vehicle pending completion of the stop."[15] Here, Officer Barcelona had the authority to briefly stop Richardson and remove him from his vehicle because Richardson was illegally parked in a handicap space.[16]

Even if the car had not been parked illegally, Officer Barcelona's actions in stopping the car and directing the Defendant to exit the vehicle would still have been lawful. Upon approaching the vehicle in a parking lot, Officer Barcelona saw the Defendant sorting pills. An officer may stop a vehicle, detain its occupants for investigation, and order them to exit the vehicle provided he has reasonable suspicion of criminal activity.[17] Here, the sorting of the pills and throwing them to the ground when the officer knocked on the window gave the officer reasonable suspicion that criminal activity was afoot. Therefore, the officer had the authority to stop the vehicle and order Richardson to exit.

The Defendant also challenges the *Terry* pat down as unlawful. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous" he may conduct a limited protective search for concealed weapons.[18] Here, the pat down was reasonable as the officer had just seen Richardson throw

---

[14] *Flores v. City of Palacios*, 381 F.3d 391, 402-03 (5th Cir. 2004) ("[Defendant's] car was parked on the wrong side of a two-way street, which is a violation of Texas law…[The officer] therefore had authority to detain her."); *see also Choudhry,* 461 F.3d at 1101 (holding that civil parking violations justify investigatory stops and noting that this conclusion is consistent with the decisions of the Fifth, Sixth, and Seventh Circuits); *United States v. Neria*, Criminal Action No. 12-388, 2014 WL 1386342, at *2 n. 8 (N.D. Tex. Apr. 9, 2014) ("Although the court refers to this encounter as a 'traffic stop,' it is clear that the vehicle was already stopped when the officers observed the vehicle. That the underlying offense was a parking (i.e., non-moving) violation rather than a moving violation does not change whether the police officers had lawful authority to conduct an investigatory stop and direct that [the Defendants] exit the vehicle.").
[15] *Neria,* 2014 WL 1386342 at *1 (citing *United States v. Meredith*, 480 F.3d 366, 369 (5th Cir. 2007)).
[16] Louisiana law prohibits persons from parking in handicap spaces, and if an officer sees a violation, he is authorized to cite the vehicle owner, order him to move the vehicle, or have the vehicle towed. *See* R.S. § 40:1742B.
[17] *United States v. Rodriguez*, 275 F.3d 43, 43 (5th Cir. 2001).
[18] *Terry v. Ohio*, 392 U.S. 1, 24 (1968).

something to the ground and he was acting moderately nervous in a high crime area. The officer was justified in performing a limited frisk to protect himself.

### 2. *The Officer Acted Unlawfully in Handcuffing the Defendant and Placing Him in the Police Vehicle.*

Next, the Court turns to the actions that occurred after the frisk to determine if they were lawful. Again, under the second prong of *Terry*, the relevant question is whether the officer's actions after he legitimately stopped Richardson were reasonably related to the circumstances that justified the stop, or to dispelling reasonable suspicion developed during the stop.[19] Whether an officer's actions were "reasonable" under the Fourth Amendment is a fact-specific inquiry, not based on bright-line rules, but on the totality of the circumstances.[20]

If there is probable cause to arrest a defendant, use of handcuffs is always proper.[21] If an officer only has reasonable suspicion that criminal activity is afoot, the use of handcuffs is not "ordinarily proper" during an investigatory stop because using handcuffs aggravates the intrusiveness of a *Terry* stop.[22] However, the use of handcuffs does not automatically convert a proper *Terry* stop into a *de facto* arrest requiring probable cause.[23]

Here, the Court finds that it must answer two questions in order to determine if handcuffing the Defendant and placing him in the vehicle were unreasonable after he had been frisked and no

---

[19] *Brigham*, 382 F.3d at 506-507.
[20] *Id.*
[21] *See United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993).
[22] *Brown*, 524 Fed. App'x at 76; *see also Washington v. Lambert,* 98 F.3d 1181, 1188 (9th Cir. 1996) ("[H]andcuffing substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry* stop.") (citation omitted); *El-Ghazzawy v. Berthiaume*, 636 F.3d 452, 459 (8th Cir. 2011) ("[During an investigatory stop] it is well established that if suspects are cooperative and officers have no objective concerns for safety, the officers may not use intrusive tactics such as handcuffing absent any extraordinary circumstances."); *United States v. Melendez–Garcia*, 28 F.3d 1046, 1052–53 (10th Cir. 1994) ("The Supreme Court has long allowed de minimus intrusions on the liberty of a person detained by a *Terry* stop to advance officer safety, such as a frisk for weapons or a request to step out of the car during a traffic stop. However, the use of force such as handcuffs…is a far greater level of intrusion, and requires the government to demonstrate that the facts available to the officer would warrant a man of reasonable caution in the belief that the action taken was appropriate.") (citations omitted).
[23] *Brown*, 524 Fed. App'x at 76.

weapons were found. First, the Court must determine whether there was probable cause to believe Richardson had committed a crime. If so, the handcuffing was permissible. Second, if there was no probable cause to arrest, and this was still an investigatory detention based on reasonable suspicion, the Court must determine whether the officer was justified in handcuffing the Defendant. The Court first addresses whether the officer had probable cause to arrest the Defendant after seeing him throw pills on the floor of the car.

"Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."[24] Where an officer lawfully views pills, has a reasonable belief that the pills are controlled substances, and has a reasonable belief that the defendant does not have a prescription for the pills, an officer has probable cause to arrest the defendant for possessing a controlled substance.[25]

However, where an officer merely observes some pills while making a traffic stop, but does not have any belief as to whether they are controlled substances or not, he does not have probable cause to arrest a defendant for possession of a controlled substance.[26] This is the case even when the defendant makes a brief furtive movement that is consistent with trying to hide the pills.[27]

---

[24] *Carroll v. Ellington*, 800 F.3d 154, 172 (5th Cir. 2015) (emphasis in original and citation omitted).
[25] *See Thorn v. McGary*, Civil Action No. 15-127, 2016 WL 3257583, at *2, *7 (E.D. La. June 14, 2016) (holding that there was probable cause to arrest defendant for possession of a controlled substance where officer believed bottle contained Xanax and there was no indication that defendant had prescription for Xanax); *see also State v. Collins*, 97-2425, (La. App. 4 Cir. 10/21/98), 721 So.2d 503, 506 (holding that there was probable cause to arrest defendant for possession of a controlled substance where officer had "reasonable belief" that pills were Valium and that defendant did not have prescription for pills).
[26] *State v. Sanchez*, 355 P.3d 795, 800-03 (N.M. App. 2015); *Gay v. State*, 138 So.3d 1106, 1110 (Fla. Dist. Ct. App. 2014) ("[T]he mere observation of pills in an aftermarket container is equally consistent with noncriminal activity as with criminal activity); *People v. Carbone*, 184 A.D.2d 648, 650 (N.Y. App. Div. 1992) (holding that where an officer had no basis to believe that pink and white pills were controlled substances, there was no probable cause to arrest driver of vehicle).
[27] *Sanchez*, 355 P.3d at 800-03; *Commonwealth v. Alvarado*, 651 N.E.2d 824, 830 (Mass. 1995) ("The view of an object which may be used for lawful as well as unlawful purposes, even a container of the type commonly used to store controlled substances, is not sufficient to provide the viewing officer with probable cause to seize that object or arrest the individual possessing that object. Nor does the observation of a furtive gesture, such as attempting to conceal

8

The Court has not been able to locate a case directly on point in this Circuit. Accordingly, it finds the case *State v. Sanchez*, a New Mexico appellate case, persuasive.[28] In that case, the officer stopped the defendant for having expired plates.[29] After approaching the driver's window, the officer shined his flashlight into the vehicle and saw a plastic bag that contained some pills on the floorboard.[30] The officer asked the defendant what the pills were and the defendant tried to slide the bag under the seat and said "what bag?"[31] The officer admitted that he could not identify the two pills he saw in the bag before removing the bag from the car.[32] The court held that because pills are not inherently criminal and because defendant's furtive movements were equally consistent with either an assertion of his right to privacy or an intent to conceal contraband, the officer did not have probable cause to seize the pills nor did he have probable cause to arrest the defendant for possession of a controlled substance.[33] The court suggested that on the facts before it there may have been reasonable suspicion to believe criminal activity was afoot but not circumstances that would give rise to a finding of probable cause.[34]

Here, the Court finds that at the moment Officer Barcelona placed Richardson in handcuffs, he only had reasonable suspicion that a crime was being committed rather than probable cause. Like the officer in *Sanchez* who did not have probable cause to arrest the defendant for possession of a controlled substance because he could not identify the pills, Officer Barcelona did not have probable cause to arrest Richardson because he could not identify the pills.[35] In fact, Officer

---

an object, give rise, in and of itself, to probable cause. We are of the opinion that the combination of these two factors is more akin to a situation giving rise to a reasonable suspicion based on articulable facts justifying a threshold inquiry than to probable cause.").
[28] *Sanchez*, 355 P.3d at 800-03.
[29] *Id.* at 797.
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at 802, 804.
[34] *Id.* at 802
[35] First H'rg Tr. 16:19-25, Doc. 28 (Testimony of Officer Barcelona).

Barcelona admitted that the pills could have been vitamins. While it was suspicious for Richardson to throw the pills onto the floor, this action, in and of itself, did not give rise to the probable cause necessary to effect an arrest. The conclusion that there was not probable cause to arrest Richardson after he was removed from the car is further supported by Officer Barcelona's own testimony. After removing Richardson from the vehicle, Barcelona said he was not placing Richardson under arrest.[36] Presumably, this was because he knew that before searching the vehicle he did not have probable cause to arrest the Defendant. Accordingly, the handcuffing cannot be justified as part of a lawful arrest because at the moment Richardson was handcuffed, Officer Barcelona did not have probable cause to arrest him.

Having determined that at the moment the Defendant was handcuffed, the officer only had reasonable suspicion and not probable cause that a crime was being committed, the Court must address whether the use of handcuffs was reasonable during the investigatory stop. In determining whether the use of handcuffs during an investigatory detention is lawful, a court must determine whether the police were "unreasonable in failing to use less intrusive procedures to conduct their investigation safely."[37] While there are no *per se* rules about exactly when the use of handcuffs is reasonable during investigatory stops, many courts have found that the use of handcuffs during investigatory stops is unreasonable when a suspect only poses a remote threat of fight or flight.[38] If a suspect is compliant, is not suspected of having committed a violent crime, and a *Terry* frisk has revealed that he is unarmed, the suspect only poses a remote threat of fight or flight.[39] The

---

[36] *Supra* note 5.
[37] *Sanders*, 994 F.2d at 206-7.
[38] *Brown*, 524 Fed. App'x at 76.
[39] *See El-Ghazzawy*, 636 F.3d at 457-59 (handcuffing was unlawful when suspect was only suspected of committing a nonviolent crime and the circumstances did not otherwise justify the use of physical force because suspect was cooperative); *Lundstrom v. Romero*, 616 F.3d 1108, 1123 (10th Cir. 2010) (handcuffing violated the Fourth Amendment where suspect was cooperative and unarmed).

Fifth Circuit has found the use of handcuffs reasonable in situations where a suspect poses a strong threat of either fight or flight.[40]

The Fifth Circuit case *United States v. Jordan* is illustrative.[41] In *Jordan*, officers were patrolling a high crime area.[42] The officers saw the defendant running at full speed from a grocery store.[43] At one point, the defendant tripped and fell but picked himself up and kept running.[44] Concluding that the defendant may have robbed the store, the officers stopped the defendant and ordered him to put his hands on the car.[45] The defendant refused to comply and jerked his hands away when the officers tried to detain him.[46] They then handcuffed the defendant and performed a pat down which revealed a weapon.[47] The defendant moved to suppress the firearm, arguing, among other things, that the pat down and handcuffing were unlawful.[48] The court held that the officers conducted a proper *Terry* stop, and that the handcuffing was permissible because the defendant was non-compliant, erratic, and aggressive.[49]

Unlike the defendant in *Jordan* who was non-compliant, erratic, and aggressive, Richardson was calm and cooperative. Where a defendant is compliant and unarmed, handcuffing should not be the first line of defense during an investigatory stop especially given the fact that handcuffing substantially aggravates the intrusiveness of a detention. While the Court acknowledges that there was some evidence in this case suggesting that Richardson might have posed a threat to the officer's safety (the officer was in a high crime area and the Defendant was

---

[40] *See Brown*, 524 Fed. App'x at 76.
[41] *United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000).
[42] *Id.* at 448.
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.* at 449.
[49] *Id.* at 450.

nervous), the Court finds that the evidence presented by the Government was not sufficient to meet the threshold needed to justify the use of handcuffs as part of an investigative detention especially where the Defendant was cooperative and had already been subjected to a pat down which did not reveal any weapons.

### B. Legality of the Vehicle Search

Having determined that handcuffing the Defendant was unreasonable, the Court must determine whether the warrantless search of the vehicle was lawful. Warrantless searches are *per se* unreasonable unless they fall within a few narrowly defined exceptions.[50] Two exceptions to that general rule are relevant here—the automobile exception and the consent exception.

Law enforcement may conduct a warrantless search of an automobile if (1) the officer conducting the search has probable cause to believe that the vehicle contains contraband; and (2) exigent circumstances justify the search.[51] The fact of a vehicle's potential mobility provides the necessary exigency.[52] Probable cause to search an automobile exists when "trustworthy facts and circumstances within the officer's personal knowledge would cause a reasonably prudent man to believe that the vehicle contains contraband."[53]

If Officer Barcelona had probable cause to search the vehicle, Richardson's consent was not required for the officer to search the car.[54] The Court finds that Officer Barcelona did not have probable cause to search the vehicle until after Richardson, who had already been improperly handcuffed and secured in the police car, responded to Officer Barcelona's question about which type of pills were in the cigarette box.[55] In other words, once Officer Barcelona learned that the

---

[50] *United States v. Roberts*, 274 F.3d 1007, 1011 (5th Cir. 2001).
[51] *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (citation omitted).
[52] *Id.* (citation omitted).
[53] *Id.* (citation omitted).
[54] *Id.*
[55] *See* pp. 9-10 above discussing what information an officer must possess sufficient for probable cause to search.

12

pills were controlled substances, saw them in a non-labeled container, and found out that the Defendant could not produce a prescription, the officer had probable cause to search the vehicle. However, where an admission by a defendant is tainted by a Fourth Amendment violation, an officer cannot rely on that tainted admission as probable cause to search a vehicle.[56] Here, the Defendant's admissions that the pills were controlled substances and that he could not produce a prescription for them were tainted by the unlawful handcuffing that occurred seconds prior. Accordingly, the search cannot be justified based on the automobile exception to the warrant requirement.

Additionally, the search cannot be justified by Richardson's consent to search the vehicle because it was given within minutes of his improper handcuffing.[57] "Consent to search may, but does not necessarily, dissipate the taint of a Fourth Amendment violation."[58] Where consent is given after a constitutional violation occurs, it will be considered valid if it was (1) voluntary and (2) an independent act of free will.[59]

The Court finds that Richardson's consent to search the vehicle was not an independent act of free will; therefore, it need not determine whether his consent was voluntary.[60] The purpose of the independent act inquiry is to determine if there was a break in the causal chain between the Fourth Amendment violation and the consent.[61] To determine if the consent to search the vehicle

---

[56] *See United States v. Hernandez*, 670 F.3d 616, 621 (5th Cir. 2012) (We agree with [the defendant] that just as the officers could not have relied on [the defendant's] admission as probable cause to enter her home, they also could not have relied on the admission as probable cause to arrest her, because the officers' Fourth Amendment violation had already occurred, tainting [the defendant's] admission.").
[57] The Court notes that it heard conflicting testimony regarding whether Richardson consented. While Richardson argued that he did not give his consent, Barcelona said that he did give consent to search the vehicle. The Court found Barcelona's testimony credible.
[58] *United States v. Montgomery*, 777 F.3d 269, 272 (5th Cir. 2015) (citation omitted).
[59] *Id.*
[60] *United States v. Beckes*, Criminal Action No. 14-654, 2014 WL 7157424, at *9 (S.D. Tex. Dec. 15, 2014) (holding that where a later consent could not dissipate the taint from the initial lawful conduct, the court did not need to proceed to a voluntariness analysis).
[61] *United States v. Wilson*, 36 F.3d 1298, 1307 (5th Cir. 1994).

was an independent act of free will, a court must look to three factors: (1) the temporal proximity of the illegal conduct and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the initial misconduct.[62] No one factor is dispositive.[63]

The first two factors weigh strongly in favor of the Defendant. There is "substantial authority for the proposition that consent given within a few seconds or minutes of the violation generally favors the defendant."[64] In fact, in the Fifth Circuit, the consent is presumed tainted if less than one hour passes between the illegal conduct and the consent.[65] Accordingly, the first factor weighs overwhelmingly in favor of Richardson as not more than a few minutes passed between his unlawful handcuffing and his consent to search the vehicle. The second factor also weighs overwhelmingly in favor of Richardson. Intervening events include, for example, consultation with an attorney; merely questioning a suspect and giving him *Miranda* warnings is insufficient to constitute an intervening event.[66] The consent will usually be considered invalid and not an act of free will when coercive tactics are present and the defendant is not informed of his right to refuse a search.[67] Here, there were no intervening circumstances of significance between the unlawful handcuffing and Richardson's consent. The Government did not present any evidence that Richardson was advised that he had a right to refuse the search. Additionally, the atmosphere was coercive given that Richardson had been secured in a police vehicle and handcuffed before there was probable cause to arrest him.

The third factor weighs in favor of the Government, but only slightly. Here, the officer's conduct was not flagrant. Although handcuffing Richardson was unreasonable during a *Terry* stop,

---

[62] *Montgomery*, 777 F.3d at 273.
[63] *Id.* at 274.
[64] *Id.* at 273-4.
[65] *Id.* at 274 ("[Fifth circuit cases] show that approximately one hour between [the] illegal [conduct] and consent favors the defendant.").
[66] *Hernandez*, 670 F.3d at 622; *United States v. Ballard*, 573 F.2d 913, 916 (5th Cir. 1978).
[67] *Ballard*, 573 F.2d at 916; *See United States v. Kelley*, 981 F.2d 1464, 1471 (5th Cir. 1993).

it was possible that because he was alone in a high crime area he thought the restraints were necessary. However, where "the first two factors cut decidedly against the Government," the consent will not be considered to be an independent act of free will.[68]

Accordingly, because both potential bases for the officer's authority to search the vehicle were tainted by the improper handcuffing, the drugs recovered from the vehicle shall be suppressed.

### C. Legality of the Motel Room Search

Next, the Court must determine whether the firearm, synthetic marijuana, and MDMA located in Defendant's motel room will be suppressed. Warrantless searches are *per se* unreasonable unless they fall within a few narrowly defined exceptions.[69] One of those exceptions is a search conducted pursuant to voluntary consent.[70] Here, the Government asserts that it had the consent of both the Defendant and his girlfriend to search the motel room.

Immediately after Officer Barcelona located Xanax, Oxycodone, and rolling papers in the Defendant's vehicle, he returned to the police vehicle to question the Defendant who had already been secured in handcuffs in the backseat. After some brief discussion about the rolling papers, Officer Barcelona requested Richardson's consent to search his motel room. Again, where consent is given after a constitutional violation occurs, it will be considered valid if it was (1) voluntary and (2) an independent act of free will.[71] For substantially the same reasons that the Court discussed above, it finds that Richardson's consent to search the motel room was not an independent act of free will; it was tainted by the prior unlawful handcuffing.

---

[68] *United States v. Jenson*, 462 F.3d 399, 407 (5th Cir. 2006).
[69] *Roberts*, 274 F.3d at 1011.
[70] *United States v. Zavala*, 541 F.3d 562, 576 (5th Cir. 2008).
[71] *Montgomery*, 777 F.3d at 273.

Having determined that Richardson's consent was invalid, the Court next turns to whether Richardson's girlfriend ("Stepter") voluntarily consented to a search of the motel room. First, the Court must determine whether Stepter's consent was voluntary, and next, it must determine whether her consent was an independent act of free will untainted by the prior unlawful police conduct. The Court finds that her consent was voluntary and untainted by any prior misconduct.

Whether consent was voluntary is determined by conducting a totality of the circumstances test by looking at six factors: (1) the voluntariness of the individual's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the individual's cooperation with the police; (4) the individual's awareness of her right to refuse consent; (5) the individual's education and intelligence; and (6) the individual's belief that no incriminating evidence will be found.[72] Here, the Government proved by a preponderance of the evidence that Ms. Stepter's consent was voluntary. She was not threatened and was extremely cooperative. Additionally, she apparently did not think the police would find any incriminating evidence in relation to her.

Further, her consent was an independent act of free will untainted by the prior unlawful handcuffing of her boyfriend. Consent to search is effective where the individual who gave consent did not know of the prior police misconduct.[73] Although the officers received her consent only a few minutes after the Fourth Amendment violation occurred, her consent could not be tainted by that violation when she neither witnessed her boyfriend's arrest nor the search of his vehicle.

However, determining her consent was valid does not end the Court's analysis. The Court must determine the scope of her authority over the bags in the room. The Court finds that while

---

[72] *United States v. Fernandes*, 285 Fed. App'x 119, 126 (5th Cir. 2008).
[73] *United States v. Richard*, 994 F.2d 244, 252 (5th Cir. 1993); *United States v. Anthony*, 487 Fed. App'x 921, 923 (5th Cir. 2012).

Stepter had the authority to consent to a search of the room and *her* bags, she did not have the authority to consent to the search of Richardson's items.

For the search of the motel room and the bags to be valid pursuant to Stepter's consent, the Government must show that Stepter had actual or apparent authority to consent to a search of Richardson's belongings.[74] "A finding of actual authority requires proof that the consenting party and the party challenging the search mutually used the property searched and had joint access to and control of it for most purposes, so that it is reasonable to recognize that either user had the right to permit inspection of the property and that the complaining co-user had assumed the risk that the consenting co-user might permit the search."[75] A finding of apparent authority "requires proof that the searching officers reasonably (though erroneously) believed that the person who [had] consented to [the] search had authority to do so."[76] Here, Stepter did not have actual or apparent authority to consent to a search of Richardson's duffel bag.[77] The testimony clearly showed that the officers were aware that the duffel bag belonged to Richardson and not Ms. Stepter. Accordingly, the search of the duffel bag, and the bottle and toiletry kit found in that bag, could only be lawful if Richardson's consent was valid. However, this Court has already determined that Richardson's consent to search his motel room was tainted by the unlawful police conduct. Accordingly, the synthetic marijuana and MDMA found in his toiletry kit which was located inside of his duffel bag shall be suppressed.

However, Stepter did have the authority to consent to a search of the motel room. Upon entering the room, the officers saw a firearm in plain view sticking out of a work boot. Seizure of

---

[74] *United States v. Jaras*, 86 F.3d 383, 389 (5th Cir. 1996); *Anthony*, 487 Fed. App'x at 923.
[75] *Jaras*, 86 F.3d at 389 (citation omitted).
[76] *Id.* at 389 (internal quotation marks and citation omitted).
[77] *Cf. Anthony*, 487 Fed. App'x at 923 (finding a girlfriend had actual or apparent authority to consent to search of boyfriend's tote bag where there was no indication that it belonged to boyfriend).

17

this pistol was lawful as the officers had authority to be in the room and its incriminating nature was readily apparent given that Officer Barcelona had previously run a background check on Richardson which indicated that he was not allowed to possess firearms.[78] Accordingly, the firearm located in his motel room shall not be suppressed.

        **D.**     **Video Footage**

Defendant's final argument for why all of the evidence should be suppressed is that the Government somehow violated Defendant's due process rights by failing to preserve the video footage recorded by Motel 6, a private company. The Court has not been able to locate any authority that requires law enforcement to obtain video footage from private businesses. Moreover, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."[79] Here, the Defendant has failed to prove any conduct that even comes close to bad faith as the officers tried to locate the video footage immediately after the Defendant requested the footage.

**III.**    **CONCLUSION**

For the reasons stated above, the Defendant's Motion to Suppress (Doc. 18) is **GRANTED in part** and the drugs seized from his vehicle as well as the drugs found in his toiletry kit shall be suppressed. The Motion is **DENIED in part** and the firearm located in Defendant's motel room shall not be suppressed.

Signed in Baton Rouge, Louisiana, on April 18, 2017.

                                              **JUDGE JAMES J. BRADY**
                                              **UNITED STATES DISTRICT COURT**
                                              **MIDDLE DISTRICT OF LOUISIANA**

---

[78] *United States v. Munoz*, 150 F.3d 401, 412 (5th Cir. 1998) (seizure of a firearm was constitutionally permissible where officers knew suspect to be a convicted felon, and they saw a firearm in plain view).
[79] *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).